UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HAVEEN BAJLORY,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 3:20-cv-00096<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Eli J. Richardson, District Judge

### REPORT AND RECOMMENDATION

Pro se Plaintiff Haveen Bajlory filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.SC. § 636(b)(1)(A) and (B). (Doc. No. 6.) Before the Court is Bajlory's motion for judgment on the administrative record (Doc. No. 23), to which the Commissioner has responded in opposition (Doc. No. 24), and Bajlory has filed a reply (Doc. No. 28). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Bajlory's motion for judgment on the administrative record.

## I. Background

### A. Bajlory's DIB Application

Bajlory applied for DIB on November 15, 2016, alleging that she had been disabled and unable to work since May 1, 2015, because of pain, numbness, and tenderness in her elbows, arms, and hands; pain and weakness in her lower back; pain and numbness in her feet and legs; osteoporosis; anemia; vitamin D deficiency; cubital tunnel syndrome; heavy menstrual bleeding; fatigue; depression; anxiety; and gastroesophageal reflux disease (GERD). (AR 69–70.[1]) The Commissioner denied Bajlory's application initially and on reconsideration. (AR 68, 100.) At Bajlory's request, an administrative law judge (ALJ) held a hearing regarding her application on August 8, 2018. (AR 33–59, 120–34.) Bajlory appeared with counsel and testified. (AR 33, 37–54.) The ALJ also heard testimony from Stephen Schnacke, a vocational expert. (AR 33, 54–58.)

### B. The ALJ's Findings

On November 16, 2018, the ALJ issued a written decision finding that Bajlory was not disabled within the meaning of the Social Security Act and denying her claim for DIB. (AR 14–32.) The ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2015 through her date last insured of December 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: carpal tunnel syndrome; fibromyalgia; plantar fasciitis; depression; and anxiety. (20 CFR 404.1520(c)).

\* \* \*

---

[1] The transcript of the administrative record (Doc. No. 16) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can understand, remember, and carry out simple work instructions. She can have occasional interaction with the general public, coworkers and supervisors. The claimant can tolerate occasional changes in the work setting.

* * *

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

* * *

7. The claimant was born on May 23, 1972 and was 45 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

* * *

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2015, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

(AR 19–26.) The Social Security Appeals Council denied Bajlory's request for review on December 4, 2019, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

3

Case 3:20-cv-00096    Document 30    Filed 02/25/22    Page 3 of 14 PageID #: 1367

### C. Appeal Under 42 U.S.C. § 405(g)

Bajlory filed this action for review of the ALJ's decision on February 3, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Bajlory argues that the ALJ erred in determining that her mental impairments do not meet or medically equal one of the mental impairments on the SSA's list of impairments that are considered severe enough to be disabling. (Doc. No. 23.) She also argues that substantial record evidence does not support the ALJ's determination of her residual functional capacity (RFC). (*Id.*) The Commissioner responds that the ALJ's decision is supported by substantial evidence and complies with SSA regulations. (Doc. No. 24.) Bajlory's reply reiterates the arguments in her motion. (Doc. No. 28.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

      **B.**      **Determining Disability at the Administrative Level**

Bajlory applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Bajlory must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If

5

Case 3:20-cv-00096    Document 30    Filed 02/25/22    Page 5 of 14 PageID #: 1369

the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the

Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

**III.     Analysis**

    **A.     The ALJ's Analysis of Bajlory's Subjective Complaints of Pain**

Bajlory argues that the ALJ erred in analyzing her pain and other symptoms of fibromyalgia, carpal tunnel syndrome, and plantar fasciitis, and that the record evidence does not support the ALJ's RFC determination. (Doc. No. 23, 28.) The Commissioner responds that the ALJ properly considered Bajlory's subjective complaints, complied with all applicable regulations, and that substantial evidence supports the ALJ's RFC determination. (Doc. No. 24.)

SSA regulations require an ALJ determining disability to "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). A two-step evaluation process applies to claims of disabling symptoms. SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); 20 C.F.R. § 404.1529(a). First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms . . . ." SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(b). If the ALJ finds that such an impairment exists, he must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c).

The SSA "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same

7

Case 3:20-cv-00096   Document 30   Filed 02/25/22   Page 7 of 14 PageID #: 1371

medical impairments, the same objective medical evidence, and the same non-medical evidence." SSR 16-3p, 2017 WL 5180304, at *4. Thus, an ALJ may "not reject [the claimant's] statements about the intensity and persistence of [her] . . . symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Other factors relevant to evaluating the intensity, persistence, and limiting effects of an individual's symptoms include daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; any measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to those symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

Bajlory alleges that she experiences chronic widespread pain because of fibromyalgia. "Fibromyalgia . . . is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.3 (6th Cir. 2007) (quoting *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005)). The Sixth Circuit has held "that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.* at 243 (footnote omitted). For example, "fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Id.* at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Consequently, "[t]he process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.*

The SSA recognizes that "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories" that the SSA uses to determine individuals' RFCs. SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012); *see also id.* at *3 (recognizing that fibromyalgia "symptoms, signs, [and] co-occurring conditions" include "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, [and] irritable bowel syndrome" (footnotes omitted)).

At her DIB hearing, Bajlory testified that she feels pain on a daily basis in her shoulders, elbows, hands, lower back, knees, hips, feet, and other joints on a daily basis. (AR 39, 42.) She feels this pain when standing, sitting, and lying down. (AR 39, 42.) Bajlory testified that she could be on her feet for around ten minutes before having to sit down and rest (AR 48) and that she does stretches recommended by her doctor but is unable to do more strenuous exercise like walking around her neighborhood or swimming (AR 51). She and her husband have taken their children to the park, but "it's hard for [Bajlory] to . . . walk[,]" so she sits down while her children play. (AR 53–54.) Bajlory also testified that she feels "tired all the time" and has to lie down and rest for an hour to an hour and a half twice per day. (AR 47.)

Bajlory testified that her pain only allows her to do housework for around twenty or twenty-five minutes and makes it difficult to leave her bed, take a shower, care for her children, drive, cook, wash dishes, or do laundry. (AR 40, 47–49.) Bajlory's children usually eat food they can prepare for themselves, like cereal or peanut butter sandwiches. (AR 40.) The family uses disposable dishes and utensils to minimize the number of dishes to be washed. (*Id.*) When she does have to wash dishes, Bajlory sits in a chair at the sink, but her hand pain and weak grip make it difficult for her to hold the dishes and she often drops things. (*Id.*)

The ALJ began his analysis of Bajlory's subjective complaints by articulating the relevant standard for assessing a claimant's symptoms:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(AR 22.)

The ALJ then analyzed Bajlory's subjective complaints as follows:

> The claimant alleged that she has diffuse pain, particularly present in her back, hips, knees, and hands which limits her ability to sit, stand, walk, lift, carry, and use her hands. She also alleged feelings of depression and fatigue affecting her memory, concentration, persistence, pace, and ability to interact with others. The claimant alleged that the combined effects of her impairments prevent her from sustaining work on a regular basis.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not fully supported by the symptoms, activities of daily living, or objective examination findings seen in the record.
>
> Regarding the claimant's physical allegations, she does have diagnoses that could reasonably be expected to cause some of her subjective reports of pain. In April 2018, the claimant was diagnosed with fibromyalgia and was shown to have 14/18

tender points. (27F/2). This is consistent with a diagnosis under SSR 12-2p. She also has a diagnosis of carpal tunnel syndrome. In March 2016, nerve conduction studies were consistent with bilateral carpal tunnel syndrome, but there was no evidence of cubital tunnel syndrome. (5F/9). The claimant underwent carpal tunnel release surgery in March 2016. (6F). The claimant also has plantar fasciitis with a heel spur for which she has received cortisone injections and had custom orthotics made. She reported that exercises for her feet helped, but she was not compliant with wearing her orthotics. (31F; 37F/1). The claimant has undergone physical therapy for her conditions. (E.g. 7F; 22F, 28F).

Nevertheless, despite her conditions, the claimant's activities of daily living and objective examinations are not entirely consistent with the degree of limitations alleged. The claimant has regularly had unremarkable physical examinations, showing intact gait, sensation, reflexes, range of motion, and only slightly diminished grip. (E.g. 11F/2; 12F/15–16; 17F/4; 21F/2, 5, 9; 37F/2–3; 37F/5–6). Her activities of daily living also show a degree of functioning commensurate with her unremarkable examinations. For example, In July 2017, she reported that she went to a trailhead with her family. (29F/8). In August 2017, she reported to her providers that she went to a state park where she engaged in grilling and swimming. (29F/5). In December 2017 and March 2018, she reported that she was interested in piano. (32F/10, 15). In May 2018, she reported that she enjoyed tending her chickens and had added 6 more chickens to the 3 she already owned. (32F/3). These activities are not consistent with the extent of the limitations alleged.

(AR 22–23.)

Considering the record evidence as a whole, the Court finds that substantial record evidence does not support the ALJ's finding that Bajlory's "activities of daily living and objective examinations are not entirely consistent with the degree of limitations alleged." (AR 22.)

None of the medical records cited by the ALJ on this point are inconsistent with Bajlory's testimony about her limitations. The ALJ cited medical records "showing intact gait, sensation, reflexes, range of motion, and only slightly diminished grip" (AR 22), but four of the eight records cited were from appointments with a sleep specialist regarding Bajlory's sleep apnea and were unrelated to treatment of her pain symptoms (AR 474, 708, 711, 715). Although the records cited by the ALJ describe Bajlory's gait, sensation, reflexes, and range of motion as normal, they also indicate that she reported fatigue (AR 474–75); "wak[ing] up in the middle of the night with pain" and "avoiding doing daily activities due to pain" (AR 491); foot, knee, and back pain that was

aggravated by standing and walking (AR 1182–83, 1185–86); and pain during examinations (AR 491, 579, 1181–83, 1184–86). Contrary to the ALJ's findings, Bajlory's other medical records from the relevant time period show that the consistently complained of weakness and fatigue and reported pain that wakes her up at night and is worsened by sitting for too long, standing, walking, and household tasks. (AR 482–83, 485, 491, 524, 537, 838–39, 847–48, 850–51, 855, 861–62, 933–34.)

Further, the ALJ's discussion of "unremarkable physical examinations, showing intact gait, sensation, reflexes, range of motion, and only slightly diminished grip" (AR 22) does not conflict with Bajlory's fibromyalgia symptoms. As explained above, "fibromyalgia patients present no objectively alarming signs[,]" *Rogers*, 486 F.3d at 243, and "manifest normal muscle strength and neurological reactions and have a full range of motion[,]" *id.* at 244 (quoting *Preston*, 854 F.2d at 820); *see also id.* (holding that "fibromyalgia is not susceptible of objective verification through traditional means"). Courts in the Sixth Circuit have therefore found that "standard clinical tests are 'not highly relevant' in diagnosing or assessing fibromyalgia or its severity." *Lawson v. Astrue*, 695 F. Supp. 2d 729, 744 (S.D. Ohio 2010) (quoting *Preston*, 854 F.2d at 820); *see also id.* (finding that "[f]ibromyalgia can be disabling even in the absence of objectively measurable signs and symptoms"). Consequently, none of the examination records the ALJ discussed discredits Bajlory's testimony regarding the severity of her fibromyalgia symptoms.

The ALJ's finding that Bajlory's "activities of daily living also show a degree of functioning commensurate with her unremarkable examinations" (AR 23) is also unsupported by substantial evidence. Bajlory told counselor Randle Branch that she and her family went to a trailhead in July 2017 and to a state park in August 2017 (AR 1081, 1084), but the record does not indicate that Bajlory participated in activities at those parks that were inconsistent with her

reported symptoms or her testimony that she sat at the park while her children played (AR 53–54). A recurring treatment note in Bajlory's counseling records states that Bajlory is "interested in piano," but does not indicate that she played the piano. (AR 1115–20.) Branch's note that "tending [chickens] brings enjoyment" (AR 1108) is not inconsistent with Bajlory's reported symptoms when considered with her testimony that her children are responsible for collecting the chicken's eggs and that she likes to sit and watch the chickens because it makes her feel peaceful (AR 51–52). When considered in the context of the record as a whole, these isolated statements in Bajlory's counseling records are not inconsistent with Bajlory's reports of disabling pain, weakness, and fatigue.

The Court therefore finds that, with respect to Bajlory's physical symptoms, the ALJ's finding that Bajlory's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (AR 22) is not supported by substantial evidence. This case should therefore be remanded to the ALJ to reconsider Bajlory's physical symptoms in light of the record evidence.

### B.     Bajlory's Other Claims of Error

Bajlory also argues that the ALJ erred in finding that her mental impairments did not meet the criteria of listings 12.04 and 12.06 and improperly discounted the limitations caused by her mental impairments in his RFC determination. (Doc. No. 23.) Because this case should be remanded to the ALJ for reconsideration of Bajlory's fibromyalgia symptoms based on the record evidence, the Court need not address Bajlory's argument regarding the ALJ's evaluation of her mental health limitations. The ALJ will no doubt need to reevaluate the limitations in Bajlory's RFC in light of the reconsideration of Bajlory's fibromyalgia symptoms. If necessary, Bajlory may raise this issue again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec.*

*Admin.*, 2020 WL 906227 (M.D. Tenn. Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

IV.     **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Bajlory's motion for judgment on the administrative record (Doc. No. 23) be GRANTED, that the Commissioner's final decision be VACATED, and that this matter be REMANDED to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 25th day of February, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge